IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF JON THOMAS | § | |
| CARMICHAEL, BY AND THROUGH | § | |
| JON TIMOTHY AND TAMI | § | |
| CARMICHAEL, INDIVIDUALLY, | § | |
| AND UPON BEHALF OF HIS HEIRS, | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 3:11-CV-0622-D |
| | § | |
| VS. | § | |
| | § | |
| RONNIE GALBRAITH, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this tragic case involving a student who committed suicide following constant bullying and harassment at school, defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss plaintiffs' claims brought under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and Texas law. For the reasons that follow, the court grants the motion as to plaintiffs' federal-law claims, does not reach their state-law claims, and grants plaintiffs leave to replead.

I

This is a suit brought by plaintiff The Estate of Jon Thomas Carmichael, by and through Jon Timothy and Tami Carmichael, individually and upon behalf of his heirs

(collectively, the "Carmichaels") following the suicide of Jon Thomas Carmichael ("Jon"),[1] a 13-year-old student who attended school in the Joshua Independent School District ("Joshua ISD").  The Carmichaels assert claims for relief under § 1983, Title IX, and Texas law.  Defendants are Ronnie Galbraith, President of the Joshua ISD School Board and Ray Dane ("Dane"), Superintendent of the Joshua ISD, in their official capacities, and Kenneth Randall Watts ("Watts"), a former Joshua ISD teacher, Dayton Barone ("Barone"), a Joshua ISD teacher, Walter Strickland ("Strickland"), a Joshua ISD teacher, and Elizabeth Rosatelli ("Rosatelli"), a Joshua ISD school counselor, in their individual capacities.

According to the Carmichaels' first amended complaint ("complaint"),[2] while Jon was attending school as a Joshua ISD student, he was bullied, harassed, and called names nearly every day.  Jon was accosted in physical education class, on the football field, and in the locker room.  On one occasion he "was called fag, queer, homo and douche."  Am. Compl. ¶ 76.  He was shoved, his belongings were destroyed, his head was flushed in the toilet, he was stuffed in a trash can, he was thrown into a dumpster, and on one occasion—the day before he died—he was stripped naked, tied up, and stuffed into a trash can while the incident was videotaped.  Joshua ISD staff, including defendants Strickland and Watts,

_____

[1]The court will refer to Jon by name because his identity has been revealed in public pleadings.  *Cf.* Fed. R. Civ. P. 5.2(a)(3) (providing that, unless court orders otherwise, in a filing that contains the name of an individual known to be a minor, the filing may include only the minor's initials).

[2]As explained in more detail *infra* at § II, the court accepts all of plaintiffs' well-pleaded facts as true and views them in the light most favorable to plaintiffs.

witnessed many of the incidents of bullying, but did nothing.

In the fall of 2009, Jon began seeing Rosatelli, a school counselor. Rosatelli knew that Jon was the victim of bullying, but she did not report or otherwise arrange for the allegations to be investigated. Defendant Barone knew that Jon was a victim of bullying and that he was suicidal, but Barone failed to arrange for the allegations of bullying to be investigated.

The Joshua ISD School Board has promulgated several policies that prohibit bullying and has specified procedures for responding to incidents of bullying and harassment.[3] But no reports regarding the incidents of bullying involving Jon were made to Joshua ISD officials. Jon's parents were never notified of any of these incidents, and no written investigations were conducted by Joshua ISD Superintendent Dane or any other person at the direction of the Joshua ISD. In 2010 Jon committed suicide at the age of 13. This lawsuit followed, and defendants now move to dismiss under Rule 12(b)(6).[4]

_____

[3]Specifically, the June 2008 policy on "Student Welfare: Freedom from Bullying" required students to report incidents of bullying to Joshua ISD employees, who were then directed to notify the campus principal. *See* Am. Compl. ¶¶ 55-56. The principal was directed to conduct an investigation within ten days and to prepare a written report. Similarly, the February 2010 policy on "Student Welfare: Freedom from Discrimination, Harassment, and Retaliation" provided that students were to report incidents of discrimination or harassment, and, upon notification, the 504 Coordinator or the Superintendent of Schools was to "promptly notify" the parents of the alleged student victim, investigate the allegations within ten days, and prepare a written report. *Id.* at ¶¶ 60-61.

[4]Although a reply brief is permitted under N.D. Tex. Civ. R. 7.1(f), defendants did not file one. The motion to dismiss therefore became ripe with the filing of the Carmichaels' response.

II

In deciding defendants' Rule 12(b)(6) motion, the court evaluates the sufficiency of the Carmichaels' complaint by "accept[ing] all well- pleaded facts as true, viewing them in the light most favorable to the plaintiff[s]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation marks omitted). To survive defendants' motion, plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (alteration omitted) (quoting Rule 8(a)(2)).

III

A

To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted). If plaintiffs seek to hold a municipality or other government entity liable, they must establish that "action pursuant to official municipal policy" caused the injury. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).

Defendants contend that the Carmichaels' § 1983 claim must be dismissed because they have failed to plead a constitutional violation that was the direct result of any failure to act by any defendant. The Carmichaels respond that defendants violated Jon's right to life and bodily integrity (substantive due process) and his right to equal protection.

B

The court considers first whether the Carmichaels have pleaded a plausible claim based on a violation of Jon's "right to life and bodily integrity." Ps. Br. 6. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by *private actors*." *DeShaney v.*

- 5 -

*Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (emphasis added). "There is a recognized substantive due process right for individuals to be free from bodily harm *caused by the state*, but as a general rule, there is no constitutional duty that requires state officials to *protect persons from private harms*." *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010) (emphasis added) (citing *DeShaney*, 489 U.S. at 195).

The Carmichaels allege that Jon was harmed by the bullying and harassment of other students and, ultimately, by committing suicide. But because they have not adequately pleaded that any state official *caused* Jon bodily harm, they have not pleaded a plausible claim for a violation of the Due Process Clause of the Fourteenth Amendment.

Courts interpreting the Supreme Court's opinion in *DeShaney* have recognized exceptions to the general rule that state officials cannot be held liable for harm caused by private actors. One exception applies when there is a "special relationship" between the individual and the state. *Kovacic*, 628 F.3d at 213. "This relationship is formed '[w]hen the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty[.']" *Id.* (some brackets in original) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002)) (some quotation marks omitted).[5] "The state

_____

[5]In *Doe ex rel. Magee v. Covington County School District ex rel. Board of Education*, 649 F.3d 335, *reh'g en banc granted*, 659 F.3d 358 (5th Cir. 2011) (en banc), a panel of the Fifth Circuit, with one judge dissenting, held in the context of a Rule 12(b)(6) dismissal that the plaintiffs had pleaded a "special relationship" under circumstances where a school district had affirmatively acted, pursuant to its check-out policy, to force a nine-year-old elementary school student into restrictive and unfettered custody of an unauthorized

- 6 -

does have a constitutional duty to protect individuals in such relationship to the state from dangers, which in certain circumstances can include private violence." *Id.* (citing *McClendon*, 305 F.3d at 324). But the Carmichaels do not allege facts in the complaint that make a facially plausible showing that the state, through the affirmative exercise of its powers, acted to restrain Jon's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty.

A second exception recognized by other courts "to the rule against state liability for violence committed by private actors" applies "in situations where 'the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury.'" *Kovacic*, 628 F.3d at 214 (quoting *McClendon*, 305 F.3d at 324). But although the Fifth Circuit in *Leffall v. Dallas Independent School District*, 28 F.3d 521, 530-32 (5th Cir. 1994), discussed the state created danger theory and set forth the elements necessary to establish the claim as a basis for liability, the panel "ultimately held that even if the state-created danger theory was constitutionally sound, the plaintiff failed to meet the necessary elements. Subsequent § 1983 cases predicated on the state created danger theory similarly pretermit the issue." *Saenz v. City of McAllen*, 396 Fed. Appx. 173, 176-77 (5th Cir. 2010) (per curiam); *see also id.* at 177 n.5. "[T]his circuit has not adopted the

_____

individual, who proceeded to molest, rape, and sodomize the student during the school day. *Id.* at 348. Because rehearing *en banc* has been granted, the panel opinion has been automatically vacated. *See, e.g., United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 389 (5th Cir. 2008) ("However, the *Southland* panel opinion upon which Marcy relies was automatically vacated when it was reheard *en banc*.").

state-created danger theory." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 466 (5th Cir. 2010).

Because the Carmichaels have not pleaded facts that make a facially plausible showing that the state, through the affirmative exercise of its powers, acted to restrain Jon's freedom to act on his own behalf through incarceration, institutionalization, or other similar restraint of personal liberty, and because the state-created danger exception to *DeShaney* is not recognized in this circuit, the court dismisses their § 1983 claim to the extent it is based on an alleged violation of the Due Process Clause of the Fourteenth Amendment.[6]

## C

The court next considers whether the Carmichaels have pleaded sufficient facts to establish a violation of the Equal Protection Clause of the Fourteenth Amendment.[7]

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in

---

[6]The Carmichaels argue that, under *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380, 388-89 (1989), a governmental entity can be held liable under § 1983 for constitutional violations resulting from a failure to train and supervise its employees when the inadequacy of training amounts to deliberate indifference and such a shortcoming can be properly thought of as a city "policy or custom." *Canton* involved the failure to provide medical treatment to a woman being held in police custody. *Canton*, 489 U.S. at 382. The Carmichaels have not sufficiently pleaded that Jon, like the plaintiff in *Canton*, was being detained by a state actor, nor have they otherwise sufficiently alleged a "special relationship" that would give rise to a duty to take affirmative action to prevent harm.

[7]Defendants do not argue specifically that the Carmichaels have failed to allege a violation of the Equal Protection Clause, but they do assert that "the Amended Complaint fails to identify any constitutional violations that were the direct result of any failure to act by any of the Defendants." Ds. Br. 4.

a protected class." *Williams v. Bramer* 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)) (internal quotation marks omitted). "[The Supreme Court has] recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citing *Sioux City Bridge Co. v. Dakota Cnty.*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., W. Va.*, 488 U.S. 336 (1989)). But "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)) (internal quotation marks omitted).

The Carmichaels first argue that their complaint asserts that, in response to incidents of bullying and harassment committed against Jon, Joshua ISD staff discriminated against him by failing to follow Joshua ISD School Board policies and procedures regarding bullying and harassment. But the Carmichaels have failed to adequately plead an equal protection claim on this basis. They do not allege that, in response to incidents of bullying and harassment of other students, one or more defendants *did* follow applicable Joshua ISD School Board policies and procedures. *See Hooker v. Dall. Indep. Sch. Dist.*, 2010 WL 4025877, at *8 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.) (dismissing § 1983 equal

protection claim where plaintiffs failed to allege that they were treated differently from others similarly situated).  Absent allegations that other, similarly situated students were treated differently, the Carmichaels have failed to plead a plausible equal protection claim.

The Carmichaels have also failed to plead sufficient facts to allege a plausible equal protection claim based on gender.  The complaint asserts that defendants discriminated against Jon based on his male gender by failing to follow Joshua ISD policies in response to incidents of bullying and harassment because Jon and the bullies and harassers were all males.  The complaint fails, however, to plead sufficient facts to support this claim.  In their brief, the Carmichaels appear to argue that their allegation that a teacher went to Strickland with concerns over Jon's being bullied and harassed in athletics, to which Strickland responded that there was not a problem and that "boys will be boys," Am. Compl. ¶ 81, establishes that defendants discriminated against Jon based on gender.  But accepting for purposes of this motion that Strickland made this statement, it is insufficient to state a facially plausible claim.  This is because the complaint does not plausibly allege that Joshua ISD employees, including Strickland, failed to follow School Board policies and procedures regarding bullying and harassment when boys bullied another boy, but acted differently (e.g., by following School Board policies) when girls bullied another girl or when boys or girls bullied a student of the opposite sex.  Because the Carmichaels have failed to plead facts regarding how a defendant acted in response to other incidents of bullying or harassment, they have not stated a plausible Equal Protection Clause violation.

D

For the reasons explained, the court holds that the Carmichaels have failed to plead a facially plausible violation of the Due Process Clause of the Fourteenth Amendment or of the Equal Protection Clause of the Fourteenth Amendment. They have therefore failed to plead sufficient facts to withstand dismissal of their § 1983 claim. *See, e.g., Mills v. Crim. Dist. Court No. 3*, 837 F.2d 677, 678 (5th Cir. 1988) ("A section 1983 complaint must plead specific facts and allege a cognizable constitutional violation in order to avoid dismissal for failure to state a claim." (citing *Brinkmann v. Johnston*, 793 F.2d 111 (5th Cir. 1986) (per curiam)). Further, absent the pleading of a facially plausible constitutional violation, the defendants sued in their individual capacities are entitled to qualified immunity. *See, e.g., Warner v. Wright*, 434 Fed. Appx. 333, 336 (5th Cir. 2011) (per curiam) ("In light of the absence of evidence of a constitutional violation, the defendants were entitled to qualified immunity from liability based on a due process violation." (citing *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009))).

IV

The court now considers defendants' motion to dismiss the Carmichaels' Title IX claim.

A

Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any

- 11 -

education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Defendants maintain that the Carmichaels' Title IX claim must be dismissed because the

conduct of the other students was not based on Jon's sex.  The Carmichaels argue in

response that defendants have improperly focused exclusively on the motivation behind the

acts of the bullies, ignoring the Carmichaels' assertions that Joshua ISD failed to protect Jon

from bullying and harassment because of his sex.  They maintain that Joshua ISD

discriminated against Jon on the basis of his sex by failing to follow its policies and

procedures regarding bullying and harassment against Jon because Jon was male and "boys

will be boys,"  Ps. Resp. 7, i.e., that those who harassed and bullied him were all males, as

was Jon.  The Carmichaels also maintain that they have sufficiently pleaded a Title IX claim,

and that defendants' motion to dismiss improperly focuses on the use of terms that have

some sexual connotation without mentioning the pleaded acts that have some sexual

connotation.  They cite their allegation that "Jon was stripped naked and videotaped by his

bullies," contending that this is "an overtly sexual act."  *Id.*

## B

For the reasons discussed *supra* at § III(C), the court holds that the Carmichaels have

not pleaded a facially plausible Title IX claim based on the allegation that Joshua ISD or any

of the individually-named defendants discriminated against Jon because he was a male.  The

complaint does not plead factual content that allows the court to draw the reasonable

inference that Joshua ISD officials (including defendants) enforced the School Board's

bullying or harassment policies differently with respect to incidents involving Jon as opposed to other students.  Taking as true the allegation that Strickland dismissed concerns about harassment and bullying with the statement "boys will be boys," the complaint does not allow the court to draw the reasonable inference that defendants treated incidents of bullying and harassment between girls, or between students of the opposite sex, differently than it treated incidents between boys.

C

The court considers next whether the complaint pleads a facially plausible Title IX claim based on student-on-student harassment.

"Same-sex sexual harassment is actionable under title IX." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (citing *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)).

> A school district that receives federal funds may be liable for student-on-student harassment if . . . [(1) the district] had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment.

*Id.* (some brackets in original) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).  "The offensive behavior, however, must still be based on sex, per the words of title IX, and 'not merely tinged with offensive sexual connotations.'" *Id*. (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002)).

As noted above, defendants move to dismiss on the ground that the Carmichaels have failed to plead a plausible claim that the actions taken by the harassers and bullies were based on Jon's sex. *See* Ds. Br. 8 ("In the present case, the actions of Jon's peers were not based on Jon's sex. As set forth in the Amended Complaint, in this case the alleged harassment was not based on gender."). The Carmichaels respond, in pertinent part,[8] that their amended complaint adequately pleads the use of terms and of acts that have sexual connotation. They cite their allegation that "Jon was stripped naked and videotaped by his bullies," contending that this is "an overtly sexual act." Ps. Br. 7.

The court holds that the amended complaint fails to plead a plausible Title IX claim on this basis because it does not enable the court to draw the reasonable inference that the harassment was based on Jon's male sex. First, although the amended complaint alleges that on one occasion—the day before Jon's death—he "was called fag, queer, homo and douche," Am. Compl. ¶ 76, it asserts that there were numerous other instances in which Jon was harassed and bullied but in which there is no mention that terms with sexual overtones were used, *see id.* at ¶¶ 1, 66-70, and 72-74. Moreover, the amended complaint alleges that, according to two other students, Jon was bullied because "he was short" or "because other kids thought it was funny." *Id.* at ¶ 66. The offensive behavior must still be based on sex,

---

[8]They also maintain that Joshua ISD failed to protect Jon from bullying and harassment because of his sex. The court has concluded *supra* at § IV(B) that this basis for their Title IX claim is not adequately pleaded because the complaint does not allow the court to draw the reasonable inference that defendants treated incidents of bullying and harassment between girls, or between students of the opposite sex, differently than it treated incidents between boys.

and not merely tinged with offensive sexual connotations. *Sanches*, 647 F.3d at 165. "Title

IX was not intended and does not function to protect students from bullying generally (as

opposed to sexual harassment or gender discrimination) or to provide them recourse for

mistreatment that is not based on sex." *Brodsky ex rel. S.B. v. Trumbull Bd. of Educ.*, 2009

WL 230708, at *7 (D. Conn. Jan. 30, 2009).

Second, the amended complaint is also deficient to support the Carmichaels' reliance

on acts "that have sexual connotation." Ps. Br. 7. The Carmichaels allege that Jon "was

bullied, harassed and called names, every day," Am. Compl. ¶ 1; he "was bullied at school

almost every day he was there . . [according to L.B.] because he was short . . [and according

to F.Z.] because other kids thought it was funny," *id.* at ¶ 66; he was "put upside down into

the school's dumpster by some bullies," *id.* at ¶ 67; he "was frequently bullied in physical

education class, on the football field and in the locker room," *id.* at ¶ 68; "when Jon was on

the football field some of the kids would get behind Jon and [C.M.] and some others would

push him down, on almost a daily basis," *id.* at ¶ 69; on one occasion "a few boys [took]

Jon's backpack, thr[e]w it on the ground and stomp[ed] on it, *id.* at ¶ 70; "[o]n a number of

occasions . . . Jon was accosted by a group of boys . . . and was placed upside down in a toilet

bowl, and had his head flushed several times, *id.* at ¶ 72; "[a] student nicknamed Turbo

would pick Jon up, place him upside down and throw him into the trash can, easily a few

times a week," *id.* at ¶ 73; and "[w]hen walking between classes he was bumped and hit

almost every day," *id.* at ¶ 74. In other words, Jon was the victim of numerous acts of

harassment and bullying that the amended complaint does not specify were marked by any

sexual overtones.  And the one alleged instance in which Jon "was again placed into a trash can . . . was stripped nude and tied up and then placed in the trash can" and "was called fag, queer, homo and douche," *id.* at ¶ 76, does not enable the court to draw the reasonable inference that the harassment and bullying was based on his male sex.  The alleged physical conduct has sexual overtones, not because Jon was a male, but because he was stripped nude. As pleaded, this act could have been undertaken to harass, bully, and/or humiliate him regardless of his male gender rather than because of it.  And the fact that the harassers and bullies on this one occasion allegedly called Jon a "fag, queer, homo and douche" does not enable the court to draw the reasonable inference that the harassment and bullying was based on his male sex. Experience and common sense teach that bullies and harassers of this age are not particular about what they say when bullying and harassing their victims.  While their words might reveal an animus based on the victim's male gender, they may also simply represent more generally a characteristic of the perpetrator's sociopathic behavior, regardless of the victim's gender.  In order for the Carmichaels to enable the court to draw the reasonable inference that the harassment and bullying was based on Jon's male sex, they must do more than allege that he was the victim of constant harassment and bullying based on unspecified reasons and then assert that, on one occasion, the harassers and bullies spoke words that had a sexual connotation.  In other words, it is not plausible, as the amended complaint is now framed, to infer from this single incident—regardless how egregious—that all of the numerous instances of harassment and bullying were based on Jon's male sex as opposed to, for example, the belief of sociopathic students that he was an easy target,

regardless of his sex.

Because the Carmichaels have failed to allege sufficient facts to state a plausible Title IX claim the court grants defendants' motion to dismiss that cause of action.

V

The Carmichaels also assert a state-law claim for negligence and seek to recover damages under Texas's wrongful death statute.   Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), "when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] 'general rule' is to decline to exercise jurisdiction over the pendent state law claims."  *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc).   Having dismissed the Carmichaels' federal-law claims, the court in its discretion declines to exercise supplemental jurisdiction over their state-law claims.[9]

VI

Although the court is granting defendants' motion to dismiss, it will permit the Carmichaels to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear

---

[9]If the court later determines that the Carmichaels have pleaded a plausible federal-law claim, it will address, if necessary, the viability of any state-law claims that they assert.

- 17 -

that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  Because there is no indication that the Carmichaels cannot, or are unwilling to, cure the defects that the court has identified, the court grants 30 days from the date this memorandum opinion and order is filed to file an amended complaint.

\*   \*   \*

For the foregoing reasons, the court grants defendants' motion to dismiss the Carmichaels' claims under 42 U.S.C. § 1983 and Title IX.  Because the court is dismissing all federal claims alleged, it declines to exercise supplemental jurisdiction over the Carmichaels' state-law claims.  The Carmichaels may file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

January 4, 2012.


_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 18 -