IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF JON THOMAS CARMICHAEL, BY AND THROUGH JON TIMOTHY AND TAMI CARMICHAEL, INDIVIDUALLY, AND UPON BEHALF OF HIS HEIRS, | § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:11-CV-0622-D |
| VS. | § § | |
| RONNIE GALBRAITH, et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

On defendants' motion to dismiss plaintiffs' second amended complaint under Fed. R. Civ. P. 12(b)(6), the court returns to this tragic case to decide whether plaintiffs have stated a claim on which relief can be granted under 42 U.S.C. § 1983 or Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). Concluding that they have not, the court dismisses with prejudice plaintiffs' claims under § 1983 and Title IX and dismisses without prejudice their claims under Texas law.

I

The background facts and procedural history of this case are set out in *Estate of Carmichael v. Galbraith*, 2012 WL 13568, at *1 (N.D. Tex. Jan. 4, 2012) (Fitzwater, C.J.) ("*Carmichael I*"), and need not be repeated at length. Following the court's decision in *Carmichael I*, plaintiffs The Estate of Jon Thomas Carmichael, by and through Jon Timothy

and Tami Carmichael, individually and upon behalf of his heirs (collectively, the "Carmichaels") filed a second amended complaint asserting claims under § 1983, Title IX, and Texas law against defendants Ronnie Galbreath ("Galbreath"),[1] President of Joshua ISD School Board, and Ray Dane ("Dane"), Superintendent of Joshua ISD, in their official capacities, and Kenneth Randall Watts, a former Joshua ISD teacher, Dayton Barone, a Joshua ISD teacher, Walter Strickland ("Strickland"), a Joshua ISD teacher, and Elizabeth Rosatelli, a Joshua ISD school counselor, in their individual capacities. The Carmichaels allege that their son, Jon Thomas Carmichael ("Jon"),[2] committed suicide at the age of 13 after being subjected on a daily basis to assault, bullying, harassment, and name calling by fellow students of Loftin Middle School ("Loftin"). In their second amended complaint, the Carmichaels attempt to address the pleading deficiencies that the court identified in *Carmichael I* when dismissing their claims under § 1983 and Title IX. Defendants move anew to dismiss under Rule 12(b)(6), and plaintiffs oppose the motion.

II

In deciding defendants' Rule 12(b)(6) motion, the court evaluates the sufficiency of the Carmichaels' second amended complaint by "'accept[ing] all well-pleaded facts as true,

---

[1] In *Carmichael I* the court spelled Galbreath's name "Galbraith" based on the content of the first amended complaint, and the case caption also spells his name "Galbraith." The correct spelling is used in the second amended complaint and in this memorandum opinion and order, although the case caption retains the spelling "Galbraith."

[2] The court will refer to Jon by name because his identity has been revealed in public pleadings. *See Carmichael I*, 2012 WL 13568, at *1 n.1.

viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). To survive defendants' motion, the Carmichaels must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

The court first considers whether the Carmichaels' amended § 1983 claim alleges sufficient facts to state a claim that is plausible on its face.

A

As explained in *Carmichael I*, "[t]o state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States

and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Carmichael I*, 2012 WL 13568, at * 2 (quoting *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 165 (5th Cir. 2007)). In *Carmichael I* the court dismissed the Carmichaels' § 1983 claim because the first amended complaint did not allege a constitutional violation either under the Due Process Clause or the Equal Protection Clause. *Id.* at *5. The court now considers whether the revisions included in the second amended complaint or the Fifth Circuit's subsequent *en banc* decision in *Doe ex rel. Magee v. Covington County School District*, 675 F.3d 849 (5th Cir. 2012) (en banc), change the court's conclusions.

B

In support of their Due Process claim, the Carmichaels allege that defendants' actions deprived Jon of "his rights to life, liberty, and bodily integrity." 2d Am. Compl. ¶ 80. As explained in *Carmichael I*, "[t]here is a recognized substantive due process right for individuals to be free from bodily harm *caused by the state*, but as a general rule, there is no constitutional duty that requires state officials to *protect persons from private harms*." *Carmichael I*, 2012 WL 13568 at * 2 (emphasis in original) (quoting *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010)). This is because "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The court concluded in *Carmichael I* that "because [the Carmichaels] have not adequately pleaded that any state official *caused* Jon bodily harm, they have not

pleaded a plausible claim for a violation of the Due Process Clause of the Fourteenth Amendment." *Carmichael I*, 2012 WL 13568, at *3 (emphasis in original). The Carmichaels do not allege in the second amended complaint that any state actor bullied Jon or caused him to commit suicide. Their allegations about assault, bullying, harassment, and name calling focus on the conduct of other middle school students, i.e., private actors.

There are two possible exceptions to the general rule that state officials cannot be held liable for harm caused by private actors. "One exception applies when there is a 'special relationship' between the individual and the state." *Id.* (citing *Kovacic*, 628 F.3d at 213). The Carmichaels confirm in their response brief that they "do not currently assert a section 1983 claim under the special relationship theory." Ps. Br. 5. But the Carmichaels argue that they have stated a claim under the second exception, referred to as "the state-created danger theory."

The state-created danger theory exception "to the rule against state liability for violence committed by private actors" applies "in situations where 'the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury.'" *Kovacic*, 628 F.3d at 214 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002)). The Fifth Circuit has "never explicitly adopted the state-created danger theory." *Doe*, 675 F.3d at 864 ("Unlike many of our sister circuits, we have never explicitly adopted the state-created danger theory."); *see also Bustos v. Martini Club, Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("[T]his circuit has not adopted the state-created danger theory."). In *Doe* the *en banc* court "declin[ed] to use [the] en banc opportunity to adopt the state-

created danger theory . . . because the allegations would not support such a theory." *Doe*, 675 F.3d at 865. In *Carmichael I* this court dismissed the Carmichaels' claim to the extent it relied on the state-created danger theory because "the state-created danger exception to *DeShaney* is not recognized in this circuit." *Carmichael I*, 2012 WL 13568 at *3. Because the second amended complaint does not add any allegations that are material to the state-created danger theory, and because the Fifth Circuit has again declined to adopt the state-created danger theory, the court adheres to its conclusion in *Carmichael I* that the Carmichaels have failed to state a plausible Due Process Clause violation predicated on the state-created danger theory. Accordingly, the court dismisses the Carmichaels' § 1983 claim to the extent it is based on an alleged violation of Jon's "rights to life, liberty, and bodily integrity." 2d Am. Compl. ¶ 80.

C

In *Carmichael I* the court dismissed the Carmichaels' § 1983 claim based on alleged Equal Protection Clause violations because the first amended complaint failed to allege that other similarly situated students were treated differently than Jon. *Carmichael I*, 2012 WL 13568, at *4. Specifically, in support of their "class of one" theory, the Carmichaels did not allege that although defendants failed to follow applicable Joshua ISD School Board policies and procedures in response to Jon's being bullied, they *did* follow applicable Joshua ISD School Board policies and procedures in response to incidents of bullying and harassment of *other* students. *Id.* (citing *Hooker v. Dall. Indep. Sch. Dist.*, 2010 WL 4025877, at *8 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.) (dismissing § 1983 equal protection claim where

plaintiffs failed to allege that they were treated differently from others similarly situated)). Similarly, in support of their Equal Protection Clause claim based on gender, the Carmichaels failed to "allege that Joshua ISD employees, including Strickland, failed to follow School Board policies and procedures regarding bullying and harassment when boys bullied another boy, but acted differently (e.g., by following School Board policies) when girls bullied another girl or when boys or girls bullied a student of the opposite sex." *Id.*[3]

The closest the second amended complaint comes to addressing this deficiency is found in ¶ 62, in which the Carmichaels allege that "[i]t is highly unlikely that if a female student had been the object of such an attack, whether at the hands of male or female students, the incident would have been investigated and reported and the bullies would have been punished." To place this assertion in context, it is necessary to recount ¶¶ 61 and 62 in their entirety. These paragraphs allege:

---

[3]To be sure, the second amended complaint contains allegations that defendants failed adequately to address assaults, bullying, and harassment. *See, e.g.,* 2d Am. Compl. ¶ 44 (alleging that "[Joshua ISD] and its agents participated in, condoned, and perpetuated a climate that permitted assaults, bullying, and harassment. This conduct is the epitom[e] of turning a 'blind eye' and a 'deaf ear[.]'"). But these allegations actually complain of indifference *regardless of* gender (i.e., universal indifference) rather than indifference *because of* gender, particularly male gender. *See id.* at ¶ 74 ("Finally, fellow student L.B. reports that during the school year, both before and after Jon's death, no school assemblies were held relating to bullying, no posters were mounted, no class discussions were held, no counseling for bullies was offered, and no confidential drop-box for reports of bullying was available.").

The second amended complaint also contains allegations that the district was aware of, and failed to address, acts of bullying committed against Jon. But if the district and its employees were universally indifferent, their conduct cannot have been based on Jon's male gender.

> A day or so before Jon's death, he was once again placed into a trash can. This time the acts of the bullies—all members of the middle school football team—escalated beyond just their regular assaults of Jon and now into a degrading sexual assault. Before they placed him in the trash can, they stripped him nude and tied him up. Then, they proceeded to parade a group of boys before him while calling him "fag", "queer", "homo["], and "douche." A number of students in the locker room observed this deplorable behavior. Jon was, of course, devastated by this assault that placed his emerging sense of manhood under direct public attack.

2d Am. Compl. ¶ 61.

> Even more shocking than the incident itself is the fact that Jon's fellow student, J.R., videotaped the attack and uploaded it to YouTube. Sometime later, a teacher who had learned of the incident and video directed J.R. to remove it from the website and destroy it. The teacher did not report the incident. *It is highly unlikely that if a female student had been the object of such an attack, whether at the hands of male or female students, the incident would have been investigated and reported and the bullies would have been punished.* Also, this was another instance where the coaches at Loftin, including Defendant Strickland, employed different customs, practices, and procedures when members of the football team were the perpetrators of an assault.

Id. at ¶ 62 (emphasis added).

 As is apparent from reading these paragraphs, the allegation that the Carmichaels make in ¶ 62 about disparate treatment is deficient in at least two respects. First, it is conclusory and speculative. There are no facts alleged that support the premise that this incident would have been investigated and reported and the bullies punished had the victim been female. This allegation reflects the Carmichael's conclusory and speculative supposition. Conclusory and speculative allegations are insufficient to state a facially

plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").[4]

Second, assuming *arguendo* that ¶ 62 is not conclusory and speculative, the allegation that "this was another instance where the coaches at Loftin, including Defendant Strickland, employed different customs, practices, and procedures when members of the football team were the perpetrators of an assault" supports the inference that the disparate treatment was *not* based on the gender of the victim but rather on the affiliation of the perpetrators (i.e., favoritism towards members of the football team).

As before, "the court holds that the Carmichaels have failed to plead a facially

---

[4]The Carmichaels' allegations that defendant Strickland was known to discipline students unevenly and harshly, that on one occasion he placed a student (not Jon) in a clothes dryer, and that "[w]itnesses report that this is not the type of punishment Strickland would mete out to a female student or an athlete," 2d Am. Compl. ¶ 53, is insufficient to plead a facially plausible claim that defendants violated *Jon's* equal protection rights. Such an allegation cannot plausibly plead an equal protection claim based on a "class of one" theory because Jon was not the individual who was punished in this manner. And to the extent plaintiffs rely on this allegation to establish unequal treatment based on gender, it is conclusory.

Similarly, the Carmichaels' allegation that a teacher punished Jon for sending text messages during class and that Jon was upset because the teacher did not punish a fellow female student who was doing the same thing does not permit the inference that this teacher's decision on this one occasion is in any way attributable to a defendant in this case or to a policy, custom, or practice of Joshua ISD. In other words, even if the inference can be drawn that this unnamed teacher in fact disciplined Jon because he was a male, it would not permit the inference that any other defendant acted similarly or that the teacher did so in accordance with a school district policy, custom, or practice.

plausible violation of the Due Process Clause of the Fourteenth Amendment or of the Equal Protection Clause of the Fourteenth Amendment. They have therefore failed to plead sufficient facts to withstand dismissal of their § 1983 claim." *Carmichael I*, 2012 WL 13568, at *5 (citing *Mills v. Crim. Dist. Court No. 3*, 837 F.2d 677, 678 (5th Cir. 1988)).

D

To the extent the Carmichaels allege claims against Joshua ISD[5] under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978), by alleging that Joshua ISD's customs and practices with regard to bullying endangered students and reflected a deliberate indifference which resulted in Jon's injury, this claim also fails. "A claim of municipal liability under Section 1983 'requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.'" *Doe*, 675 F.3d at 866 (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). The Fifth Circuit "ha[s] stated time and again that '[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing.'" *Id.* at 866-67 (alteration in original) (quoting *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997)). Because, for the reasons explained above, the Carmichaels have not alleged that Jon suffered a constitutional violation, there can be no § 1983 liability against

---

[5]Although Joshua ISD is not named as a party to this lawsuit, the Carmichaels' claims against Galbreath and Dane in their official capacities are treated as claims against Joshua ISD. *See, e.g., Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978) (holding that suit against government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent.").

Joshua ISD. In addition, although neither side argues qualified immunity, the court reiterates its statement from *Carmichael I* that, absent the pleading of a facially plausible constitutional violation, the defendants sued in their individual capacities are entitled to qualified immunity. *Carmichael I*, 2012 WL 13568, at *5 (citing *Warner v. Wright*, 434 Fed. Appx. 333, 336 (5th Cir. 2011) (per curiam)).

IV

The court next considers whether the Carmichaels have pleaded a facially plausible Title IX claim.

A

In *Carmichael I* the court concluded, for the reasons discussed in relation to plaintiffs' § 1983 Equal Protection Clause claim, that the Carmichaels "ha[d] not pleaded a facially plausible Title IX claim based on the allegation that Joshua ISD or any of the individually-named defendants discriminated against Jon because he was a male." *Carmichael I*, 2012 WL 13568, at *5. The court concluded that the first amended complaint "[did] not plead factual content that allow[ed] the court to draw the reasonable inference that Joshua ISD officials (including defendants) enforced the School Board's bullying or harassment policies differently with respect to incidents involving Jon as opposed to other students." *Id.* The court accepted as true the allegation that Strickland dismissed concerns about harassment and bullying with the statement "boys will be boys," but it held that the first amended complaint "[did] not allow the court to draw the reasonable inference that defendants treated incidents of bullying and harassment between girls, or between students of the opposite sex, differently

than it treated incidents between boys." *Id.* The court today reaches the same result, for the reasons explained *supra* at § III(C).

B

1

In *Carmichael I* the court considered whether the first amended complaint had pleaded a facially plausible Title IX claim based on student-on-student harassment. The court held that the first amended complaint failed to enable the court to draw the reasonable inference that the harassment was based on Jon's male sex. *Carmichael I*, 2012 WL 13568, at *6.

First, although the first amended complaint alleged that on one occasion—the day before Jon's death—Jon "'was called fag, queer, homo and douche,'" the complaint "assert[ed] that there were numerous other instances in which Jon was harassed and bullied but in which there is no mention that terms with sexual overtones were used." *Id.* (citations omitted). And "the [first] amended complaint allege[d] that, according to two other students, Jon was bullied because 'he was short' or 'because other kids thought it was funny.'" *Id.* (citations omitted).

Second, the first amended complaint did not support the Carmichaels' reliance on acts "'that ha[d] sexual connotation.'" *Id.* at *7 (citing Ps. Br. 7). The court recounted the pertinent allegations of the first amended complaint and concluded that they asserted that "Jon was the victim of numerous acts of harassment and bullying that the amended complaint [did] not specify were marked by any sexual overtones." *Id.* And regarding "the one alleged instance in which Jon 'was again placed into a trash can . . . was stripped nude and tied up

and then placed in the trash can' and 'was called fag, queer, homo and douche,'" *id*., the court held that it could not draw the reasonable inference that the harassment and bullying were based on his male sex. The court reasoned from the assertions of the first amended complaint that

> [t]he alleged physical conduct has sexual overtones, not because Jon was a male, but because he was stripped nude. As pleaded, this act could have been undertaken to harass, bully, and/or humiliate him regardless of his male gender rather than because of it. And the fact that the harassers and bullies on this one occasion allegedly called Jon a "fag, queer, homo and douche" does not enable the court to draw the reasonable inference that the harassment and bullying was based on his male sex. Experience and common sense teach that bullies and harassers of this age are not particular about what they say when bullying and harassing their victims. While their words might reveal an animus based on the victim's male gender, they may also simply represent more generally a characteristic of the perpetrator's sociopathic behavior, regardless of the victim's gender. In order for the Carmichaels to enable the court to draw the reasonable inference that the harassment and bullying was based on Jon's male sex, they must do more than allege that he was the victim of constant harassment and bullying based on unspecified reasons and then assert that, on one occasion, the harassers and bullies spoke words that had a sexual connotation. In other words, it is not plausible, as the amended complaint is now framed, to infer from this single incident—regardless how egregious—that all of the numerous instances of harassment and bullying were based on Jon's male sex as opposed to, for example, the belief of sociopathic students that he was an easy target, regardless of his sex.

*Id*.

2

As in *Carmichael I*, the court holds that the Carmichaels have not pleaded a facially plausible Title IX claim based on student-on-student harassment. "Title IX was not intended and does not function to protect students from bullying generally (as opposed to sexual harassment or gender discrimination) or to provide them recourse for mistreatment that is not based on sex." *Brodsky ex rel. S.B. v. Trumbull Bd. of Educ.*, 2009 WL 230708, at *7 (D. Conn. Jan. 30, 2009). The conduct at issue must constitute "offensive behavior . . . based on sex, rather than personal animus." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2010 WL 445939, at *2 (N.D. Tex. Feb. 8, 2010) (Stickney, J.) *aff'd,* 647 F.3d 156 (5th Cir. 2011). "The offensive behavior . . . must still be based on sex, per the words of title IX, and 'not merely tinged with offensive sexual connotations.'" *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002)).[6]

The Carmichaels appear to attempt in their second amended complaint to include additional allegations of harassing and bullying conduct with sexual overtones. But like their first amended complaint, the second amended complaint essentially paints a picture of a middle school boy who was constantly harassed and bullied regardless of his gender rather than based on his gender. As in the first amended complaint, the second amended complaint

---

[6]Although the Carmichaels argue in their response brief that harassment due to a victim's perceived homosexuality is sufficient to constitute sexual harassment, the second amended complaint does not allege that Jon was harassed because the perpetrators perceived him to be homosexual.

includes just one incident in which the predators used words that could suggest a gender-based animus rather than a personal animus. A day or so before Jon's death, members of the Loftin football team stripped him nude, tied him up, and placed him in a trash can. A group of boys then paraded before him while calling him "fag," "queer," "homo," and "douche." As this court explained in *Carmichael I*, this single incident, amid numerous ones that contain no hint of gender-based animus, is not enough to state a facially plausible student-on-student harassment claim. The conduct of these middle school students is abhorrent. But the words are those of middle school students.

> Experience and common sense teach that bullies and harassers of this age are not particular about what they say when bullying and harassing their victims. While their words might reveal an animus based on the victim's male gender, they may also simply represent more generally a characteristic of the perpetrator's sociopathic behavior, regardless of the victim's gender.

*Carmichael I*, 2012 WL 13568, at *7. The Carmichaels "must do more than allege that [Jon] was the victim of constant harassment and bullying based on unspecified reasons and then assert that, on one occasion, the harassers and bullies spoke words that had a sexual connotation." *Id.* It is not plausible to infer from one incident—regardless how egregious—that all of the numerous instances of harassment and bullying alleged in the second amended complaint "were based on Jon's male sex as opposed to, for example, the belief of sociopathic students that he was an easy target, regardless of his sex." *Id.*

As reprehensible as was the conduct that victimized Jon, Title IX is simply "not intended and does not function to protect students from bullying generally." *Brodsky*, 2009

WL 230708, at *7. Accordingly, the court concludes that the Carmichaels have failed to state a plausible Title IX claim.

V

As in *Carmichael I*, the court in its discretion declines to exercise supplemental jurisdiction over the Carmichaels' state-law claims. *See Carmichael I*, 2012 WL 13568, at *8 ("Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), 'when all federal claims are dismissed or otherwise eliminated from a case prior to trial, [the Fifth Circuit has] stated that [its] "general rule" is to decline to exercise jurisdiction over the pendent state law claims.'" (quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998))). The court therefore dismisses the Carmichaels' Texas law claims without prejudice.

\* \* \*

For the foregoing reasons, defendants' motion to dismiss the second amended complaint is granted as to the Carmichaels' claims under § 1983 and Title IX, and those claims are dismissed with prejudice. The court in its discretion declines to exercise supplemental jurisdiction over the Carmichaels' state-law claims, and it dismisses those claims without prejudice.

**SO ORDERED.**

September 26, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE